UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20534-CIV-MARTINEZ-BECERRA

CARLOS PEREZ JR.,

        Plaintiff,

v.

TOWN OF MIAMI LAKES,

        Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

Defendant, Town of Miami Lakes (the "Town"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), files this Motion to Dismiss, and states as follows:

### INTRODUCTION

Plaintiff has filed a First Amendment retaliation claim against the Town. Plaintiff's Complaint, however, completely fails to meet the stringent requirements required to plead municipal liability under *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 694 (1978). Moreover, Plaintiff has failed to state a cause of action as to his underlying retaliation claim based upon the allegations set forth on the face of the Complaint. For the reasons set forth below, Plaintiff's Complaint should be dismissed for failure to state a claim.

## BACKGROUND[1]

According to the Complaint, on October 29, 2019, plaintiff Carlos Perez Jr. ("Plaintiff") purchased a house located at 14412 Rosewood Road, Miami Lakes, Florida 33014 (the "Property"). *Compl.* ¶¶ 1, 6. The Property "was uninhabitable at the time, and contained an unpermitted addition," which Plaintiff planned to "demolish and rebuild." *Id.* ¶¶ 6-7.

Plaintiff applied for and obtained a roofing permit to replace the house's existing roof. *Id.* ¶ 9. Plaintiff also applied for a building permit "to replace the unpermitted addition made to the Subject Property by a prior owner." *Id.* ¶ 10.

At some unspecified point between February and April of 2020, Plaintiff "proceeded with demo and construction [of the addition] **without a permit**." *Id.* ¶ 11 (emphasis added). On April 28, 2020, Town building inspectors arrived at the Property to inspect the roof construction. *Id.* ¶ 13. Upon observing the "substantially complete addition," the Town "issued a Stop Work Order on the roof." *Id.* Inspector Carlos Valenti informed Plaintiff that Michel Mesa ("Mr. Mesa"), the Town Building Official, would reach out to Plaintiff. *Id.* After Plaintiff had not heard back from Mr. Mesa for "[a] few days," Plaintiff asked his neighbor, who is a developer, if he "knew of anyone at the Town that could help out to move things along." *Id.* ¶ 14. Plaintiff's neighbor informed Plaintiff that he was friends with Mayor Manny Cid ("Mayor Cid") and Plaintiff and his neighbor reached out to Mayor Cid to "discuss the situation." *Id.*

On some unspecified date, Mayor Cid visited the Property and informed Plaintiff "that he would set up a meeting with Mesa to resolve the issues regarding the" Property. *Id.* Plaintiff then "received an irate call from Mesa," who informed Plaintiff that "he does not take orders from any

---

[1] The following facts are taken from Plaintiff's Complaint and are accepted as true solely for purposes of this Motion to Dismiss.

2

politician." *Id.* ¶ 15.  On May 1, 2020, in order to "smooth things over and work with Mesa," Plaintiff requested a meeting with Mr. Mesa to discuss how to bring the Property into compliance. *Id.* ¶ 16.  Plaintiff and Mr. Mesa spoke on May 4, 2020.  *Id.*  Plaintiff's Complaint does not describe the contents of the May 4, 2020 conversation.  *Id.*

Plaintiff retained GPRS to scan the addition's concrete walls and "to demonstrate compliance with applicable provisions of the Florida Building Code."  *Id.* ¶ 17.  GPRS used "ground penetrating radar ('GPR') instead of x-rays to scan the reinforced concrete."  *Id.*  On July 13, 2020, GPRS provided a report to Mr. Mesa, which Mr. Mesa rejected.  *Id.* ¶.  Mr. Mesa informed Plaintiff that he "would allow GPRS to revise the GPRS Report, provided that the revised report included some additional details."  *Id.* ¶ 18.  Plaintiff retained GPRS to conduct a second scan and provided Mr. Mesa with a second report that included additional details.  *Id.*  This second scan "was conducted by a GPRS technician under the direction of Carlos Naumann, P.E.['Naumann'] . . . of GFA International, Inc."  *Id.*  Naumann and GPRS produced a second report to Mr. Mesa on August 4, 2020.  *Id.*  Mr. Mesa rejected the Naumann/GPRS Report because the second scan did not use X-ray scanning.  *Id.*

Plaintiff then retained "U.S. South Engineering & Testing Lab, Inc. ('USSETL') to perform X-ray scanning of the reinforced concrete."  *Id.* ¶ 19.  USSETL conducted "X-ray scans of the reinforced concrete" on August 24, 2020, and USSETL submitted its report to Mr. Mesa on August 26, 2020.  *Id.*  On September 4, 2020, Mesa required the following revisions to the USSETL report:

> 1-Page 1 mentions (structural drawing dated 12-16-2019). Those need to be part of the report as an exhibit. Those are the drawings "US South" is saying the site generally conforms with. We need to match those to the permit package (it needs to be the same pages we approved here).

3

> 2-The report must link/identify the structural members on the structural drawings with the x-ray location #'s in order to determine that all structural members were checked. For example, x-ray location # 1, T.beam b-1 south elevation, column c-1 on SE corner. Tie downs on west wall. For example, I don't see any x-rays for the new continuous footing, reinforced masonry (fill cells and ladder type reinforcement), etc. on this report. All the structural members need be x-rayed and certified, I can only determine that once they are identified.
>
> 3-Page 11 of the report mentions an "unloading ramp", that seems to be for the wrong project. This is a residential addition.
>
> 4-The report needs to include the make, model and calibration certification for the x-ray equipment used as required in testing protocol TAS 301.

*Id.* ¶ 20.

USSETL subsequently revised its report "to add the structural drawings dated 12-16-2019 and delete replace reference to an 'unloading ramp' with 'residential home.'" *Id.* ¶ 21. The Complaint does not state whether Plaintiff provided Mr. Mesa with "the make, model and calibration certification for the x-ray equipment used," as requested by Mr. Mesa. On September 18, 2020, Mesa informed Plaintiff of the following:

> After reviewing (at length) the report provided by US South Engineering, the pictures provided by the owner and the approved plans, I've determine [sic] that the unpermitted work does not comply with the plans submitted to the Town of Miami Lakes. At this time I'm recommending demolition of the unpermitted work.

*Id.* ¶ 22. In an October 6, 2020 meeting, Mr. Mesa informed Plaintiff that "he would only accept X-ray scans of every linear foot of reinforced concrete used in the addition to the Subject Property." *Id.* ¶ 25.

## STANDARD OF REVIEW

Pursuant to Rule 8(a), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original).

## ARGUMENT

**I.   PLAINTIFF'S *MONELL* CLAIM AGAINST THE TOWN MUST BE DISMISSED FOR FAILURE TO MEET THE STRINGENT PLEADING REQUIREMENTS FOR SUCH AN ACTION.**

    **A.   The Stringent Standard for *Monell* Liability.**

The Supreme Court has placed strict limitations on municipal liability under Section 1983. *Grech v. Clayton Cty.*, 335 F.3d 1326, 1329 (11th Cir. 2003); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1993). To impose liability against the Town, Plaintiffs must demonstrate: (1) that their constitutional rights were violated, (2) that the Town had a custom or policy that constituted deliberate indifference to those constitutional rights, and (3) that the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also Sanchez v. Miami-Dade Cty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. 2007) ("proof of 'a single incident of unconstitutional activity' cannot suffice under *Monell* to impose liability" on a municipality) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985)). <u>These principles have long been recognized as a threshold pleading requirement and failure to properly allege a custom or policy routinely results in dismissal.</u> *See, e.g., Vila v. Miami-Dade Cty.*, No. 14-21346-CIV, 2014 WL 6976273, at *6 (S.D. Fla. Nov. 25, 2014) (granting county's motion to dismiss where the plaintiff failed to identify a custom or policy).

A municipality may be held liable "only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-established that it assumes the force of law." *Denno v. School Bd. of Volusia Cty.*, 218 F.3d 1267, 1276 (11th Cir. 2000), *cert. denied*, 531 U.S. 958 (2000). In other words, a plaintiff has two methods by which to establish a municipality's policy: identify either (1) an officially promulgated municipal policy; or (2) an unofficial custom or practice of the municipality shown through the repeated acts of a final policymaker for the municipality. *Monell*, 436 U.S. at 694 (1978) (citing *Grech*, 335 F. 3d at 1329). To demonstrate a pervasive practice, a plaintiff must show a persistent and widespread practice with actual or constructive knowledge of such by the municipality's governing board. *McDowell*, 392 F.3d at 1290. Random acts, isolated incidents, or dissimilar complaints are insufficient to establish a custom or policy and to impose liability on the governing body of the municipality. *Id.*; s*ee also Sanchez*, 2007 WL 1746190, at *3 (stating "proof of 'a single incident of unconstitutional activity' cannot suffice under *Monell* to impose liability" on a municipality) (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985)). Accordingly, without an official policy (which Plaintiff has not and cannot allege), a *Monell* claim cannot be demonstrated in the absence of other incidents involving factual situations that are substantially similar to the case at hand. *Mercado v. City of Orlando*, 407 F.3d 1152, 1161-62 (11th Cir. 2005); *Bailey v. Hughes*, 815 F.Supp.2d 1246, 1259 (M.D. Ala. 2011) (granting defendants' motion to dismiss a *Monell* claim that arose from a strip search and other alleged constitutional violations because the plaintiff alleged only in a conclusory fashion that the violations were the result of a policy or custom).

Finally, even if a sufficient municipal policy, custom or practice is established, a plaintiff still has the substantial burden to demonstrate that the policy, custom or practice was the "moving

force," or "driving force" behind Plaintiff's purported constitutional injury. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997); *McDowell*, 392 F.3d at 1292. The Supreme Court has required that "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405. "This high standard of proof is intentionally onerous for plaintiffs; imposing liability on a municipality without proof that a specific policy caused a particular violation would equate to subjecting the municipality to respondeat superior liability – a result never intended by section 1983." *Gold*, 151 F.2d at 1351, n. 10. Plaintiff fails to meet this rigorous standard, as he has not alleged a policy, custom, or practice.

### 1. Plaintiff Has Not Pleaded that the Town Had an Official Policy, Practice, or Custom Sufficient to State a Section 1983 *Monell* Claim.

While Plaintiff purports to allege a First Amendment violation under the Petition Clause, Plaintiff has not alleged the existence of an underlying, unconstitutional Town policy or custom. Thus, on the face of the Complaint, Plaintiff has not even attempted to assert a colorable *Monell* claim—the only possible avenue for municipal liability in this case. Plaintiff's Complaint should therefore be dismissed on this ground alone.

Here, the Complaint fails to identify the existence of any written policy that is allegedly unconstitutional and was adopted by a final policymaker for the Town.[2] *See Casado v. Miami-*

---

[2] To the extent Plaintiff alleges that Mr. Mesa's determination constitutes a policy adopted by a final policymaker, such an allegation is entirely without merit because a Building Official's findings are subject to appeal. *See Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997)("[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review.").

Pursuant to § 8-4(d), a Building Official's determinations may be appealed to the Board of Rules and Appeals. *Available at* https://library.municode.com/fl/miami_-_dade_county/codes/code_of_ordinances?nodeId=PTIIICOOR_CH8BUCO_ARTIAD_S8-

*Dade County*, 340 F. Supp. 3d 1320, 1327 (S.D. Fla. 2018) ("In the present case, the Amended Complaint fails to identify an official policy, not simply allege that one exists."). Therefore, Plaintiff's *Monell* claim—to the extent Plaintiff's Complaint is construed to assert such a claim—must depend on the existence of a custom or practice that was so pervasive and well-established that it assumed the force of law. *See Asia*, at *8.

However, Plaintiff's Complaint fails to identify "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)(internal citations omitted). Random acts or isolated incidents, which is, at best, what Plaintiff presents here, will not suffice. *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff's Complaint also does not identify any "incidents involving factual situations that are substantially similar to the case at hand." *Mercado v. City of Orlando*, 407 F.3d 1152, 1161–62 (11th Cir. 2005).

For the reasons set forth above, Plaintiff has not alleged that his claimed injuries "result from an [unconstitutional] official government policy." *Denno*, 218 F.3d at 1276. Plaintiff has also failed to allege that his claimed injuries were the result of "a custom or practice so pervasive and well-established that it assumes the force of law." *Id.* Accordingly, to the extent Plaintiff attempts to assert a *Monell* claim, he has clearly failed to allege a legally sufficient cause of action and dismissal is warranted.

---

4BORUAP. The Court may consider this Code provision at this stage of the proceedings because it is central to Plaintiff's claim and its validity is undisputed. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005)(noting that on a motion to dismiss, a court may consider matters "outside the four corners of the complaint" if "central to the plaintiff's claims and [] undisputed in terms of authenticity").

8

## II. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR AN UNDERLYING FIRST AMENDMENT RETALIATION CLAIM

### A. Plaintiff has Failed to Plausibly Allege a First Amendment Violation.

Plaintiff has failed to allege an underlying First Amendment violation. Thus, to the extent Plaintiff asserts a *Monell* claim, such a claim fails because an underlying constitutional violation must serve as the predicate for municipal liability in a *Monell* action. *Watts v. City of Hollywood, Florida*, 146 F. Supp. 3d 1254, 1270 (S.D. Fla. 2015).

To state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Plaintiff's First Amendment retaliation claim fails under the second and third prongs.

#### 1. Plaintiff has Failed to Allege that Mr. Mesa's Actions Adversely Affected Protected Speech.

A plaintiff "suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). This is examined under an objective standard. *Id.* at 1251.

Plaintiff asserts that Mr. Mesa's decision to reject the GPRS and Naumann Reports was in retaliation for Plaintiff speaking with Mayor Cid regarding Plaintiff's ongoing roofing permit issues. *Compl.* ¶ 32. Plaintiff alleges that Mr. Mesa's retaliatory motive is evidenced by the fact that Mr. Mesa told Plaintiff that "he does not take orders from any politician" in a "rude and sarcastic" tone. *Compl.* ¶ 16. According to Plaintiff, this evidences such retaliatory motives because Mr. Mesa otherwise had "no reason to believe" that the unpermitted work was "unsafe or

in a dangerous condition." *Id.* ¶ 28. Plaintiff's Complaint, however, fails to allege sufficient facts to give rise to such an inference.

In fact, Plaintiff's Complaint makes clear that Mr. Mesa *did* have reason to believe the admittedly unpermitted construction was unsafe. Plaintiff concedes in the Complaint that he improperly began "construction [on the Property's addition] without a permit." *Compl.* ¶ 11. Pursuant to § 8-5(a)(3) of the Miami-Dade County Code, "[i]ncomplete buildings commenced without a permit . . . **shall be presumed and deemed unsafe** and a permit shall be obtained to demolish the structure or bring the building into compliance with the applicable codes . . . ." (emphasis added).³ Thus, contrary to Plaintiff's assertion that Mr. Mesa had "no reason to believe" that the unpermitted work was "unsafe or in a dangerous condition," the Miami-Dade County Code actually *presumes* that such unpermitted construction is unsafe. § 8-5(a)(3), Miami-Dade County Code. Further, the Miami-Dade County Code gives Mr. Mesa the discretion to require that the unpermitted construction be demolished *or* brought into compliance. *Id*. As Plaintiff's Complaint makes clear, rather than requiring that the unpermitted addition be demolished at the outset, Mr. Mesa instead opted to allow Plaintiff to attempt to bring the unpermitted construction into compliance with the Miami-Dade County Code and Florida Building Code. As the Complaint demonstrates, Mr. Mesa attempted to work with the Plaintiff property owner for over five (5) months, from approximately May 1, 2020 to October 6, 2020. *Compl.* ¶¶ 16-25.

---

³ *Available at* https://library.municode.com/fl/miami_-_dade_county/codes/code_of_ordinances?nodeId=PTIIICOOR_CH8BUCO_ARTIAD_S8-4BORUAP. The Court may consider this Miami-Dade County Code provision on a motion to dismiss because it is central to Plaintiff's claim and its authenticity is undisputed. *Maxcess*, 433 F.3d at 1340 n.3.(noting that on a motion to dismiss, a court may consider matters "outside the four corners of the complaint" if "central to the plaintiff's claims and [] undisputed in terms of authenticity"). The Code, which Plaintiff cites to in his Complaint, is central to his retaliation claim because he alleges there was "no reason" for Mr. Mesa to believe the unpermitted construction was unsafe. *Compl.* ¶ 28.

10

Plaintiff's alleged facts, viewed under an objective standard, are plainly insufficient to have adversely affected Plaintiff's protected speech. Indeed, a building official's attempt to assist a property owner with bringing unpermitted construction into code compliance, rather than simply recommending that the unpermitted construction be demolished at the outset, could not "deter a person of ordinary firmness from the exercise of First Amendment rights" simply because, ultimately, the Plaintiff property owner was unable to bring said property/construction into compliance. *Bennett*, 423 F.3d at 1254.

### 2. Plaintiff has Failed to Plausibly Allege a Causal Connection Between his Speech and Mr. Mesa's Actions.

Plaintiff has likewise failed to allege a causal connection between his speech and Mr. Mesa's actions. To plausibly allege a causal connection, a plaintiff must demonstrate "that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)(citation and quotation omitted).

Plaintiff attempts to demonstrate causation by alleging that Mr. Mesa stated "he does not take orders from any politician" in a "rude and sarcastic" tone. Compl. ¶ 15. Such an allegation, however, is insufficient to plausibly demonstrate the Mr. Mesa's actions were motivated by Plaintiff's meeting with Mayor Cid. As noted above, Mr. Mesa's actions described in the Complaint were in accordance with the Miami-Dade County Code, which presumes that Plaintiff's unpermitted construction is unsafe. In fact, as explained *supra*, Mr. Mesa gave Plaintiff more opportunities to bring the property into compliance and correct the violation than the Code even required.

Moreover, even assuming for purposes of this Motion to Dismiss that Mr. Mesa was aggravated by Plaintiff's conversation with Mayor Cid, such discontent cannot give rise to First Amendment liability, since Mr. Mesa's actions were in accordance with the Miami-Dade County

11

Code. *See Foy v. Holston*, 94 F.3d 1528, 1534 (11th Cir. 1996)("[S]tate officials can be motivated, in part, by a dislike or hostility . . . and still act lawfully."). Accordingly, for the reasons set forth above, Plaintiff has failed to state a cause of action for First Amendment retaliation.

## CONCLUSION

For the reasons set forth above, Plaintiff has failed to meet the stringent requirements required to plead a *Monell* claim. Moreover, Plaintiff has failed to state a cause of action as to his underlying First Amendment retaliation claim. Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim.

WHEREFORE, the Town respectfully requests that the Court dismiss Plaintiff's Complaint, and grant such further relief as this Court deems just and proper.

Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Town of Miami Lakes*
200 East Broward Boulevard, Suite 1900
Fort Lauderdale, FL 33301
Telephone: (954) 763-4242
Facsimile: (954) 764-7770

By: /s/ Justin D. Luger
Matthew H. Mandel
Florida Bar No. 147303
mmandel@wsh-law.com (primary)
lbrewley@wsh-law.com (secondary)
Justin D. Luger
Florida Bar No. 0084446
jluger@wsh-law.com (primary)
szavala@wsh-law.com (secondary)
Charles M. Garabedian
Florida Bar No. 1000974
cgarabedian@wsh-law.com (primary)
isevilla@wsh-law.com (secondary)

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing document and the notice of electronic filing has been provided to counsel for Plaintiff via electronic mail: Paul S. Figg, Esq., (pfigg@bergersingerman.com; mnewland@bergersingerman.com; DRT@bergersingerman.com), Berger Singerman LLP, 350 E. Las Olas Blvd. Suite 1000, Fort Lauderdale, FL 33301.

/s/ Justin D. Luger

.